**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARWAN SNODGRASS,**

      **Plaintiff,**

                                    **Civil Action 2:22-cv-3604**
    **v.**                                **Judge Sarah D. Morrison**
                                      **Magistrate Judge Kimberly A. Jolson**

**ANNETTE CHAMBERS SMITH, et al.,**
      **Defendants.**

**REPORT AND RECOMMENDATION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendants Annette Chambers-Smith, Timothy Shoop, Corby Free, Tabitha Thompson, and Beth Mollett. (Doc. 22). For the following reasons, the Undersigned **RECOMMENDS GRANTING** the Motion.

## I.    BACKGROUND

Plaintiff Marwan Snodgrass, currently incarcerated and proceeding *pro se*, brought this action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Chambers-Smith, Chillicothe Correctional Institution ("CCI") Warden Shoop, CCI Inspector Free, and CCI mailroom employees Thompson, Mollett, and John/Jane Does. (Doc. 1-1 at ¶¶ 3–10).[1] Plaintiff alleges that Defendants violated his First Amendment, Sixth Amendment, and Fourteenth Amendment Rights, and is suing Defendants in their personal and official capacities. (*Id.* at ¶¶ 4–9, 49–50). Plaintiff seeks monetary and punitive damages and

---

[1] Plaintiff submitted his complaint and exhibits on October 6, 2022, as an attachment to his motion for leave to proceed *in forma pauperis*. (*See generally* Doc. 1-1). The Clerk detached the complaint after the IFP was granted at Doc. 5. For the purposes of this report and recommendation, the Undersigned will reference Doc. 1-1 when discussing Plaintiff's complaint because Doc. 5 does not contain the exhibits.

injunctive relief. (*Id.* at ¶ 59). Particularly, he asks that ODRC return to a previous legal mail policy and stop the "practice/policy of opening and cop[y]ing legal mail through the regular mail process." (*Id.*).

At the outset, it is necessary to review ODRC's inmate mail policies. In October 2021, inmates at CCI were notified that ODRC was changing its policy on how it processed legal mail. (*See* Doc. 22-1 at 3–5). At the time, Ohio law defined "legal mail" as "mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee." Ohio Admin. Code 5120-9-17(B)(2) (effective through April 7, 2022). The new policy would require these legal entities to also mark legal mail "with a valid control number provided by [ODRC]." Ohio Admin. Code 5120-9-17(B)(2) (effective April 8, 2022); *see also Vinson v. Brown*, No. 2:23-CV-80, 2024 WL 84149, at *1 (S.D. Ohio Jan. 8, 2024) (describing the prior and current legal mail policies). The policy, 75-MAL-03, was a supplement to the regular mail policy, 75-MAL-01, and would go into effect in February 2022. (Doc. 1-2 at 3–6; Doc. 22-10). What remained consistent between the old and new policies was that legal mail could "be opened and inspected for contraband only in the presence of the inmate-addressee." (Doc. 22-1 at 4); *see also* Ohio Admin. Code 5120-9-17(B)(2).

When CCI receives legal mail, it is recorded in a legal mail log that the inmate-addressee signs to indicate the mail was opened in his or her presence. (Doc. 1-2 at 4). If legal mail is withheld on the suspicion that it contains contraband, the inmate receives a DRC 4225 form, "Notice of an Unauthorized Item Received/Withholding of Incoming Mail." (*Id.* at 6). ODRC's policy states that the "addressee has fifteen (15) days to appeal the withholding of legal mail" and

staff should "hold the legal mail (without opening, altering, or copying the legal mail) until a decision is made by the managing officer/designee on the appeal." (*Id.*).

In contrast, mail that does not meet the definition of legal mail is treated as "regular, non-legal mail" that can be "opened and may be read or copied in the institution mail office . . . ." Ohio Admin. Code 5120-9-17(B)(1)–(2); (*see also* Doc. 22-1 at 3–5; Doc. 22-10 at 2–3).  Regular mail that exceeds five pages is prohibited and automatically considered contraband. (Doc. 22-1 at 4). When regular mail contravenes the mail policy, the inmate is sent a DRC 4225 form. (*See* Doc. 22-1 at 20; Doc. 22-10 at 2, 3).  The inmate may either send the unauthorized regular mail item to another address or allow it to be destroyed as contraband. (*Id.*).  The form instructs that the inmate has ten days to select an option, or the item will be discarded. (*Id.*).

Plaintiff's allegations fall into two categories: (1) allegations relevant to mail received from Greentree and (2) allegations relevant to mail received from other sources.  The Undersigned outlines the factual details of each below.

### A.      Mail From Greentree

On December 13, 2021, Plaintiff sent a "non-grievance communication medium called a 'kite,'" (Doc. 22-2 at 3), to CCI mailroom staff, providing notice that he wanted his legal mail opened in his presence. (Doc. 1-1 at ¶ 22; *see* Doc. 1-3).  At that time Plaintiff was anticipating receiving medical records he says were necessary to litigate his mother's wrongful death action in the Clark County Common Pleas Court. (Doc. 1-1 at ¶¶ 30, 56; *see* Doc. 1-4; *see generally* Doc. 22-8). Defendant Mollet replied to the kite, informing Plaintiff that the only legal mail that would not be "opened, examined and copied, are those marked Legal, Confidential, from an Attorney, or with a control number." (Doc. 1-3).

Then on December 20, Plaintiff sent a kite to the mailroom about the status of the anticipated mailing, specifying that it contained "medical records among other legal documents." (Doc. 1-4 at 1).  He said the mail was "received by: a Hamilton which was left on the dock" on December 8.  (*Id.*; *see* Doc. 1-4 at 3 (UPS tracking receipt showing a twenty-pound package was delivered on 12/8/2021, received by "Hamilton," and left at "Dock")).  Defendant Thompson replied, "[i]f you don't have it yet then we don't have it."  (*Id.*).

The next day, the mailroom received a package from "Greentree" containing the medical records via first class mail.  (Doc. 22-6 at ¶ 4).  But the envelope was not marked "as being legal correspondence, nor did it contain a legal control number for verification."  (*Id.*).  Thompson testified that she would typically use a search engine to attempt to verify a legal mail sender by looking for their address or phone number.  (*Id.* at ¶ 5).  But she could not recall in this instance the verification steps she took—only that she ultimately was unable to verify the sender status of "Greentree."  (*Id.*).  After her unsuccessful attempt, Thompson "presumed it was regular mail," because it did not appear to be legal mail under ODRC's policies.  (*Id.* at ¶¶ 5–6).  But she did not review the contents of the package itself.  (*Id.*).

Instead, Thompson deemed the package contraband because it exceeded the five-page limit.  (*Id.*).  She then sent Plaintiff a DRC 4225 form stating that the mail he received from "Green Tree" was nuisance contraband from an "unverified sender" and was "not legal."  (Doc. 22-1 at 20; *see* Doc. 22-6 at ¶ 6).  Plaintiff did not return the form within the required ten days or provide an address where the item could be sent.  (Doc. 22-6 at ¶ 6; *see* Doc. 1-6 at 4).  Thompson subsequently shredded the package on January 11, 2022.  (Doc. 22-6 at ¶ 7; *see* Doc. 22-1 at 20).

In the weeks during and following these events, Plaintiff communicated with different staff members about his mail. First, Plaintiff filed an informal complaint with Defendant Free on December 21, which stated:

> On 12/8 [I] [received] a package of legal mail, consisting of confidential medical records along with legal documents, the aforementioned package was [delivered] on 12/8 to this institution and signed by: a hamilton, and was left at a dock. when [I] sent a kite to inquire into the status of such [I] was informed by a t. Thompson that the institution those not have to back since [I] do not have. [H]owever; again [I] have a screen shot of a notice from the postal service informing me of the package being delivered.. This package contains important medical of my mothers medical history, and is needed to perfect my civil matter, so if possible can someone inform me why a person by the name of 'Hamilton' signed for such and [I] have not [received] it.

(Doc. 1-5).

This was escalated to a grievance on January 3, 2022, when Plaintiff notified Free that his informal complaint was overdue. (*Id.*). He asserted that the mail in question was "clearly confidential in nature" and that "Greentree legal" was a "legal serving agency." (*Id.*). He also said that denying him the mail was a violation of his "first amendment right to access to the courts." (*Id.*). Free responded on January 25. (*Id.*). He informed Plaintiff:

> To investigate your grievance, I interviewed the grievant and Lt. Welch. I also reviewed the legal mail log and DRC 4225 Notice of Unauthorized Items Received. You did not receive any legal mail during this time frame. There was mail received from a Green Tree. Staff attempted to verify the sender and were unable to verify the address. You received the 4225 Notice of unauthorized items received. The form instructs you to make your decision on what you would like to happen to your mail within ten days and that failure to do so would result in the disposal of the unauthorized items under AR 5120-9-55. You neglected to respond in the ten days as requested on the DRC 4225 and staff disposed of the unauthorized item. There is no violation of any rule, policy, or law. Your grievance has been denied. This office will take no further action concerning this matter.

(Doc. 1-5). The next day, Plaintiff appealed the decision. (*Id.*). But a month later, Free's denial was affirmed after the Assistant Chief Inspector's review. (*Id.*).

Plaintiff also sent a kite to Defendant Shoop on December 21, 2021, and provided much of the same information as in his informal complaint.  (*See* Doc. 1-6 at 1).  In response, Shoop told Plaintiff to "[a]ddress your concern with Mr[.] Goble and we will come to a resolution based on current policy."  (*Id.*).

Plaintiff then sent a kite to Mr. Goble, detailing the situation.  (Doc. 1-6 at 2).  Mr. Goble provided the legal mail policy at the time (75-MAL-01) that defined confidential legal mail as mail coming from "courts, counsel, officials of the confining authority, state and local chief executive officers, administrators of the grievance systems, the Correctional Institution Inspection Committee (CIIC), and members of the paroling authority." (Doc. 1-6 at 2).  He advised Plaintiff to send a complaint to the mailroom supervisor should he believe his mail came from one of those sources.  (*Id.*).  The record does not reflect that Plaintiff did so.

After Defendant Free denied the grievance, Plaintiff sent a kite to the mailroom, requesting "a copy form of the action which was taken by mail officer" for the package.  (Doc. 1-6 at 4).  Defendant Thompson responded that the notice of unauthorized item form was written on December 21, 2021, and Plaintiff's mail was destroyed on January 11, 2022.  (*Id.*).  Thompson said, "that is longer than the 10 days normally given to send your pink slip back, you never sent your pink slip back so it was destroyed."  (*Id.*).

Ultimately, the legal mail logs kept by CCI reflect Plaintiff did not receive any mail the institution classified as legal between December 7 and December 23, 2021.  (Doc. 22-1 at 6–20; *see* Doc. 22-1 at 1–2).

### B.    Mail From Other Sources

Plaintiff also alleges that between January and April 2022, he received fifteen pieces of mail that he says were "clearly legal mail by nature" yet were opened outside of his presence:

6

A. Brant E. Poling of Poling-law- January 7, 2022.
B. Richard W. Schulte of Wright & Schulte - January 20, 2022
C. Lucy A. Reed of Poling law- January 26, 2022
D. Sabrina S. Sellers of Poling law- February 9, 2022
E. Sabrina S. Sellers of Poling law- February 16, 2022
F. Elizabeth Wilfong of Bieser, Greer & Landis, LLP - February 26, 2022
G. Sabrina S. Sellers of Poling law- February 23, 2022
H. Sabrina S. Sellers of Poling law- February 24, 2022
I. Joshua F. DeBra, of Calderhead, Lockemeyer & Peschke law office - March 3, 2022
J. Joshua F. DeBra, of Calderhead, Lockemeyer & Peschke law office - March 4, 2022
K. Bobby S. Sprader of Bricker & Ecker law- March 4, 2022
L. Joshua F. DeBra, of Calderhead, Lockemeyer & Peschke law office - March 8, 2022
M. Sabrina S. Sellers of Poling law- March 8, 2022
N. Sabrina S. Sellers of Poling law- March 22, 2022
O. Sabrina S. Sellers of Poling law- April 23, 2022

(Doc. 1-1 at ¶ 27).

In his response to Defendants' motion, Plaintiff provided scans of a few of these correspondence including: an envelope dated January 7, 2022, with "Poling | The Practice Perfected" on the return address; the accompanying letter from Brant E. Poling and Lucy A. Reed informing him they had been retained to represent a defendant in his mother's wrongful death action; an envelope dated January 20, 2022, with "Wright & Schute" on the return address; and an envelope dated January 26, 2022, with "Poling | The Practice Perfected" on the return address. (*See* Doc. 33-1 at 5–8).  As for the rest, Plaintiff said he received the letters without envelopes, so he has no way of knowing how they were marked when received by the mailroom.  (*Id*. at 5, n. 1).

The record is scant of any more details about these pieces of mail.  The only other evidence relevant here is that on January 26 and 27, Plaintiff sent two kites asking about the time and date mail from "Poling the practice perfected" was forwarded to him."  (Doc. 1-6 at 3 (request sent to mailroom); Doc. 1-6 at 5 (request sent to Defendant Free)).  Defendant Mollet replied that the mail was received, and it would be copied and sent to him.  (*Id*.).

7

Defendants moved for summary judgment on all of Plaintiff's claims. (*See generally* Doc. 22). The summary judgment motion has been briefed and is ripe for review. (Docs. 33, 34).

## II.     STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52; *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III.     DISCUSSION

Construing Plaintiff's complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), he brings claims arising under the First, Sixth, and Fourteenth Amendments. (*See* Doc. 1-1 at ¶¶ 49–50).

### A. First Amendment Interference with Privileged Legal Mail and Access to Courts Claims

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)). When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts ....")). Yet, "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney." *Id.* at 874.

"In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner." *Id.* at 874 (citation omitted). But "prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Id.* at 873–874.

Plaintiff has alleged that Defendants violated this right either directly or in a supervisory capacity by destroying his mother's medical records and by opening his legal mail outside of his presence.  (Doc. 1-1 at ¶ 28; *see also* Doc. 1-1 at ¶¶ 49, 50).

      *1.*     *Greentree Mail*

Plaintiff alleges that Defendants violated his First Amendment rights when the package he received from Greentree containing his mother's medical records was destroyed.  (Doc. 1-1 at ¶ 37).  He claims that his mail should have been held "until a decision [was] made by the managing officer/designee" because he filed a grievance on the mail's status with Defendant Free.  (*Id.* at ¶ 38; *see* Doc. 1-2 at 6 (legal mail policy)).  Defendants counter that the package from Greentree was not entitled to this protection because it was regular mail.  (Doc. 22 at 11–13; *see* Doc 22-10 (regular mail policy)).

So, the crux of the parties' dispute lies here:  Plaintiff says the mail from Greentree was legal mail; Defendants say it was not.  If the package was legal mail, ODRC policy required it be held pending an appeal.  If it was not legal mail, ODRC policy allowed for its destruction if Plaintiff did not return the DRC 4225 form and provide a forwarding address.  This dispute necessitates an inquiry into whether the package from Greentree was, in fact, "legal mail" for purposes of a constitutional claim.  "The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court, not one of fact that can be submitted to a jury." *Sallier*, 343 F.3d at 873.  The Undersigned concludes that the package from Greentree was not constitutionally protected "legal mail" for two reasons.

First, the mail was not marked in a way that put Defendants on notice that the package contained confidential or legal materials.  Greentree Legal is a courier service that offers "safe and

secure delivery of legal documents." (Doc. 22-4 at 5 (Greentree Legal website)). This fact alone is not dispositive, as mail delivered by courier services can sometimes qualify as legal mail. *Kensu*, 87 F.3d at 174 ("[I]t is the content [of the mail] and not the method of delivery which is the subject of the protected right."). But the Sixth Circuit has been plain that mail must be clearly marked in some way as containing legal materials, as being confidential, or as being from an attorney. *See Sallier*, 343 F.3d at 875 ("Nothing on the envelope indicated that it contained confidential, personal, or privileged material, that it was sent from a specific attorney at the ABA, or that it related to a currently pending legal matter in which Sallier was involved."); *Kensu*, 87 F.3d at 174 ("[W]e today define 'legal mail' to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery."); *Am. C.L. Union Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Kensu*, 87 F.3d at 174) ("[T]he letters were addressed to a specific inmate, clearly marked 'legal mail,' and included the name and bar number of a licensed Michigan attorney."); *Boswell v. Mayer*, 169 F.3d 384, 388–89 (6th Cir. 1999) (permitting a policy to treat mail from a state attorney general's office as legal mail only if it bore the return address of a licensed attorney and was marked as containing privileged content). Testimony reflects that the package was not clearly marked as being legal correspondence or as being confidential. (Doc. 22-6 at ¶ 4); *Rodgers v. Driesbach*, No. 2:20-CV-2848, 2021 WL 854971, at *3 (S.D. Ohio Mar. 8, 2021) ("[C]lear marking is generally required to confer protections for legal mail . . .") (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)). Moreover, the return address, according to the Defendant Thompson and the DRC 4225 form, was "Greentree," rather than from a court or specific attorney. (Doc. 22-1 at 20; Doc. 22-6).

Plaintiff argues that he previously received mail delivered by Greentree in September 2021 that was treated as legal mail.  (Doc. 33 at 4; *see* Doc. 33-1 at 4 (UPS tracking receipt for mail from Chris Heit at Greentree Legal LLC)).  This, however, is not a basis for constitutional liability when mail otherwise does not meet the definition of legal mail.  And the Undersigned declines to speculate on what differences between that mail and the package at issue may have afforded the former differing treatment or protections.

Simply put, a "prison official must have some means of knowing that the correspondence is a protected communication."  *Wade v. Stephens*, No. 1:21-CV-728, 2022 WL 368649, at *3 (W.D. Mich. Feb. 8, 2022).  To require otherwise would put an administrative burden on mailroom staff.  Here, there was nothing clearly marked on the package from Greentree that would put CCI mailroom staff on notice that it should receive constitutional protections.

Second, the type of mail in question does not implicate legal mail protections.  A "key issue" of whether a communication is legal mail is if it "implicate[s] the right . . . of access to the courts."  *Am. C.L. Union Fund of Michigan*, 796 F.3d at 643 (citing *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (internal quotation marks omitted).  Here, Plaintiff says he received the medical records from his "power of attorney, who acted on behalf of my late mother's estate" for use in his mother's wrongful death action.  (Doc. 31-1 at 2).  And by destroying the mail, Defendants denied him access to the courts.  (Doc. 33 at 5–6).

For certain, Plaintiff enjoys a constitutionally protected right of access to the courts under the First Amendment.  *Thomas v. Rochell*, 47 F. App'x 315, 317 (6th Cir. 2002) (citation omitted).  But that right is not unlimited.  "[T]he First Amendment only protects a prisoner's access to the courts as it relates to cases which attack his convictions and sentences and to cases which challenge the conditions of his confinement.  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

Particularly, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. A wrongful death suit does not challenge Plaintiff's conviction, sentence, or conditions of his confinement. What's more Plaintiff was proceeding *pro se* in the wrongful death action, so his claim that Defendants' treatment of the package impacted an attorney-client relationship is unfounded. (*See* Doc. 33-1 at 2). And ultimately, the Common Pleas Court of Clark County found Plaintiff lacked standing to bring the wrongful death action because he had not "been designated by the Probate Court as the personal representative" of his mother. (Doc. 22-8 at 56). Even had Plaintiff received the package pursuant to the legal mail policy, he still would not have had this designation assigned to him by a probate court when he brought the wrongful death suit. *See Thomas*, 47 F. App'x at 317 (citing *Lewis*, 518 U.S. at 349–51) ("[A]n inmate claiming that he was denied access to the courts must show that he suffered an actual litigation related injury or legal prejudice because of the actions of the defendants."). For all of these reasons, Plaintiff's right does not extend to this instance nor afford the Greentree mail heightened protection.

In sum, Plaintiff's mail from Greentree was not clearly marked "legal mail." At base, Plaintiff was given the opportunity to provide a forwarding address where ODRC could send his mother's medical records. But because he did not, the package was justifiably discarded pursuant to ODRC's regular mail policy. Because there was no constitutional violation, it is not necessary to evaluate the potential individual liability of each Defendant or whether Plaintiff exhausted his administrative remedies. Accordingly, Defendants are entitled to summary judgment for this claim.

2.      *Mail from Other Sources*

The Undersigned now turns to Plaintiff's allegations concerning fifteen pieces of mail "clearly legal . . . by nature" he received in early 2022 that were opened and copied outside of his presence.  (Doc. 1-1 at ¶ 27; *see also* Doc. 33 at 11).  Defendants argue that Plaintiff's complaint did not put them "on notice about any abridgement of his rights as to that list of correspondence . . . he describes that issue for the first time in his Response."  (Doc. 34 at 4).  So, neither their Motion for Summary Judgment nor their reply address these allegations.  (*See generally* Docs. 22, 34).

Defendants' description of this issue as being raised for the first time in Plaintiff's response to the summary judgment motion is not completely accurate.  To be sure, Plaintiff's complaint is not a model of clarity.  For instance, he does not separate out his different constitutional claims, and most of his complaint discusses the factual background of the Greentree mail.  (*See generally* Doc. 1-1).  Yet, before listing the correspondence at issue, Plaintiff says he "received the following mail between January and February from various sources which [are] clearly legal mail by nature," and then lists the sender and postmark date of each piece of mail.  (*Id.* at ¶ 27).  And in the next two paragraphs, Plaintiff says that his "federal constitutional rights" were violated by Defendants "opening his 'legal mail' outside his presence," and that his legal mail was processed as regular mail, was copied either partially or illegibly, and was delayed in getting to him.  (Doc. 1-1 at ¶¶ 28–29; *see also* Doc. 1-1 at ¶¶ 51–53).  It is not a stretch to connect Plaintiff's immediately preceding list of correspondence to these allegations.  More still, Plaintiff attached a kite sent to Defendant Mollett requesting information about one of the pieces of mail, to which Mollet responded that the mail would be copied and sent to Plaintiff.  (*See* Doc. 1-6 at 3).  When read as

14

a whole, the complaint sufficiently alleges the mail in question was legal and was being opened and copied outside of Plaintiff's presence.

Furthermore, the course of proceedings put Defendants on notice that Plaintiff was pursuing this claim. *See, e.g.*, *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005) (applying a "course of the proceedings" test to determine if a defendant received notice of a claim when the complaint was ambiguous). While the Undersigned does not have Plaintiff's full discovery requests before her, some of Plaintiff's discovery requests concerned mail received between January and April 2022. (*See* Doc. 14 (requesting legal mail and regular mail of Plaintiff's filed or stored between August 2021 and April 2022); Doc. 24 (same)). Additionally, this Court had no difficulty identifying Plaintiff's claims about Greentree and his other legal mail as distinct issues in a previous order. (*See* Doc. 3 at 1–2 ("Specifically, plaintiff alleges that his First, Sixth, and Fourteenth Amendment rights were violated based on his legal mail being opened outside of his presence and the failure of CCI to timely or completely provide him with legal mail. Plaintiff *further* alleges that legal mail from Green Tree Legal . . . [was] destroyed . . . ." (emphasis added))).

Nevertheless, the record does not support an issue fit for a jury's consideration. The three envelopes provided in the record Plaintiff says are legal in nature suffer from similar clear marking deficiencies as the Greentree package. The envelopes were not marked as being from an attorney, as being legal mail, or as containing confidential correspondence. All three provided only the return address of a law firm. (Doc. 33-1 at 5 (envelope from Poling), 7 (envelope from Wright & Schulte), 8 (envelope from Poling)). For certain "as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Kensu*, 87 F.3d at 174; *see Am. C.L. Union Fund of Michigan*, 796 F.3d at 643. But precedent does not support the notion that a general return

15

address from a law firm is enough for constitutional protections to apply.  *See, e.g.*, *Am. C.L. Union Fund of Michigan*, 796 F.3d at 644 (mail from the ACLU marked as legal mail and with the name and bar number of a licensed attorney garnered protections); *Boswell*, 169 F.3d at 388–89 (mail from the state attorney general's office would be protected if it bore the return address of a licensed attorney and was marked as containing privileged content); *Kensu*, 87 F.3d at 174 (mail clearly marked as legal, from an attorney, and containing confidential legal materials was legal mail); *cf. Rodgers*, 2021 WL 854971, at *3 (providing mail marked with the return address of the Ohio Innocence Project and the Ohio Public Defender's Office met pleading requirements on a motion for judgment on the pleadings because they provide direct legal services to inmates).  More is required.

Additionally, very little factual record is available concerning the circumstances of Defendants' alleged actions with the mail at issue.  Even if all fifteen pieces of mail were "legal mail," Plaintiff's allegations that his mail was opened and copied outside of his presence are almost completely conclusory.  Plaintiff provides very little additional information to support his assertion.  At the summary judgment phase, that is not enough, as "[t]his court has consistently held that damage[s] claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what each defendant did to violate the asserted right."  *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002); *Terry v. Crawford*, No. 3:21-CV-35, 2024 WL 1155854, at *5 (S.D. Ohio Mar. 18, 2024); *cf. Glass v. Ramos*, No. 3:19-CV-P714-DJH, 2021 WL 3008602, at *4 (W.D. Ky. July 15, 2021) (holding a one sentence statement that "legal mail

16

from the Civil Libertys Union has been opened without me being present" was too conclusory and lacking in factual specificity to support a claim on a motion to dismiss).

Notably, Plaintiff provides no facts as to who opened and copied his letters expect in one instance. Defendant Mollett's response to Plaintiff's kite that a letter from "Poling" would be copied and sent to him is the only evidence in the record that his allegations are true. (Doc. 1-6 at 3; *see* Doc. 33-1 at 5 (envelope bearing the return address of Poling)). Yet even assuming, in *arguendo*, this was clearly marked legal mail, "a single incident of opening legal mail does not give rise to a constitutional claim." *Terry*, 2024 WL 1155854, at *5 (citing *Glass*, 2021 WL 3008602, at *4); *see also Johnson v. Wilkinson*, 229 F.3d 1152 (Table) (6th Cir. 2000) ("[Plaintiff] has, at most, set forth isolated instances of interference with prisoners' mail and only one instance that affected him. This random and isolated interference with [Plaintiff's] mail did not violate his constitutional rights."); *Moore v. Vrabel*, No. 2:24-CV-13, 2024 WL 806255, at *3–4 (W.D. Mich. Feb. 27, 2024) (holding that an allegation of legal mail being opened outside of a plaintiff's presence on one occasion "did not suggest a blatant disregard for mail handling" as would state a legal mail claim); *Russell v. Underwood*, No. 3:20-CV-P627-RGJ, 2021 WL 519900, at *2 (W.D. Ky. Feb. 11, 2021) ("Plaintiff has failed to state a claim for a violation of a constitutional right . . . because he has only alleged a one-time occurrence of confidential mail being opened."); *Jackson v. Williams*, No. 1:11-CV-01841, 2011 WL 6326123, at *2 (N.D. Ohio Dec. 16, 2011) ("An isolated incident of inadvertent mail interference does not state a claim that rises to the level of constitutional magnitude."). In *Terry*, the Court concluded that when a plaintiff showed a dispute of fact as to a single incident of a defendant opening one piece of alleged legal mail, a reasonable jury could not conclude the plaintiff's rights were violated by "the opening of [his] legal mail in an arbitrary and capricious manner." *Terry*, 2024 WL 1155854, at *5. The same is

true here where, at most, Plaintiff has shown there is a dispute of fact as to only one piece of alleged legal mail being opened and copied outside of his presence by Defendant Mollett.

In sum, the record reflects that three of the fifteen letters were not clearly marked in a way that would put Defendants on notice that the mail should garner heightened constitutional protections. Even if they had been clearly marked, Plaintiff only alleged that his mail was opened and copied with the requisite specificity required at the summary judgment stage as to one of these letters. And Plaintiff did not develop the record as to the other pieces of mail beyond conclusory allegations. Therefore, the Undersigned **RECOMMENDS** that Defendants are **GRANTED** summary judgment on these claims.

### B. Fourteenth Amendment Access to Courts Claims

Plaintiff next alleges Defendants' actions violated his right of access to the court as "protected by the Fourteenth Amendment and [the] Due Process" clause. (Doc. 1-1 at ¶¶ 49–50; *see also* Doc. 33 at 5–7). But as discussed above, Plaintiff's right of access to the courts does not extend to a wrongful death action. *Thomas*, 47 F. App'x at 317 (citing *Lewis*, 518 U.S. at 355); *Thaddeus-X*, 175 F.3d at 391. Therefore, the Undersigned **RECOMMENDS** that Defendants are **GRANTED** summary judgment as to this claim.

### C. Sixth Amendment Claim

Finally, Plaintiff alleges that Defendants violated his Sixth Amendment rights. (Doc. 1-1 at ¶¶ 49–50). The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. Const. Am. VI. This right does not extend to attorney-client relationship in civil litigation. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting . . . ."). It is unclear from the

18

record which actions Plaintiff says violated this right.  (Doc. 1-1 at ¶¶ 49–50).  But ultimately, Plaintiff has not asserted that Defendants interfered with the attorney-client relationship in a criminal case.  (*See generally* Docs. 1-1, 33).  Accordingly, it is **RECOMMENDED** that Defendants are entitled to summary judgment on this claim.

    **D.**    **Immunity**

    Plaintiff brought his complaint against Defendants in both their individual and official capacities.  (Doc. 1-1 at ¶¶ 4–9).  But Plaintiff seeks relief, in part, in the form of money damages.  (*Id.* at ¶ 59).  Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974).  The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982).  The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state.  *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945).  A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Thus, actions against state officials in their official capacities are included in this bar.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70–71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver."

(citation and ellipsis omitted)).  Therefore, Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages.

Additionally, Defendants say they are entitled to qualified immunity for Plaintiff's claims against them in their individual capacities.  (Doc. 22 at 15–16).  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. 7, 8, 141 S.Ct. 52, 53, 208 L.Ed.2d 164 (2020) (citation and quotation marks omitted).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

"Determining whether government officials are entitled to qualified immunity generally requires two inquiries: First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (citation and internal quotation marks omitted).  "These prongs need not be considered sequentially." *Id.* (citation omitted).  Since the Defendants have raised the qualified immunity defense, Plaintiff bears the burden of showing that Defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)).

As explained above, even when viewing the facts in the light most favorable to him, Plaintiff has not established that a constitutional violation occurred.  More still, even if the correspondence at issue was constitutionally protected legal mail, the right was not so clearly established at the time of the violation that Defendants would know they were violating that right.  *See Sallier*, 343 F.3d at 873.  For certain, precedent for years has protected legal mail from being opened and copied outside of a prisoner's presence or from being opened in an arbitrary and capricious manner.  *See, e.g., id.* at 873–874; *Kensu*, 87 F.3d at 174.  But, as described above, courts in this Circuit have consistently held that legal mail must be marked in some way to put an institution on notice that it should receive heightened constitutional protections.  *See, e.g., Am. C.L. Union Fund of Michigan*, 796 F.3d at 643; *Boswell*, 169 F.3d at 388–89.  The way Plaintiff's mail in question was marked did not conform to the requirements of this precedent.  Therefore, Defendants would not have a reason to know they were violating any of Plaintiff's clearly established rights when they handled his mail.  For these reasons, Defendants are entitled to qualified immunity on these claims.

### E.    Injunctive Relief

Finally, Plaintiff alleges the ODRC mail policy that requires legal entities to register for a control number and affix it to mail for it to be considered "legal mail" is unconstitutional.  (Doc. 1-1 at ¶ 50; Doc. 33 at 8–12).  Particularly, he says the current policy "has done nothing more than hindered/infringed on Plaintiff[']s protected rights . . . The enforcement of a control number for every piece of legal mail would conflict with the opt in system and constitutionally protected rights."  (Doc. 33 at 11; *see also* Doc. 1-1 at ¶ 50).  He asks for an order that ODRC return to the previous legal mail policy that did not require a control number.  (Doc. 1-1 at ¶ 59).

However, Plaintiff does not have standing to bring this claim because has not alleged an injury in fact. To satisfy Article III standing, a plaintiff must show he has suffered an injury in fact "meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620 (6th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, Plaintiff has not shown he suffered a concrete and particularized, and actual or imminent harm because of the control number requirement. Plaintiff says that Defendants were enforcing the new control number policy before its official implementation date. (Doc. 33 at 11). Plaintiff claims that had CCI been operating under the old policy, his mail would have been treated as legal mail rather than as regular mail. (*Id.*). But, as explained above, Defendants' treatment of Plaintiff's mail would have been the same under either policy because his mail was not clearly marked as being legal mail. Moreover, the institution's enforcement of the new legal mail policy before its official implementation date is not a constitutional violation. *Johnson v. Long-Azbell*, No. 1:18-CV-367, 2018 WL 3653201, at *3 (S.D. Ohio June 25, 2018) (citing *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("claims related to violations of prison policies do not state a constitutional violation")), *report and recommendation adopted*, No. 1:18-CV-367, 2018 WL 3642846 (S.D. Ohio Aug. 1, 2018). And Plaintiff has not demonstrated that his mail which otherwise deserves heightened legal protection has or will imminently be treated as regular mail under the current ODRC policies. Therefore, the Undersigned declines to recommend the requested injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS GRANTING** Defendants' Motion for Summary Judgment (Doc. 22).

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: April 25, 2024                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE