UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARWAN SNODGRASS,

        Plaintiff,    :

 v.                               Case No. 2:22-cv-03604
                                  Judge Sarah D. Morrison
                                  Magistrate Judge Kimberly A.
ANNETTE CHAMBERS-              Jolson
SMITH, *et al.*,             :

        Defendants.

## ORDER

This matter is before the Court on the Report and Recommendation (R&R, ECF No. 35) issued by the Magistrate Judge on April 25, 2024, in which the Magistrate Judge recommended that the Court grant Defendants' Motion for Summary Judgment (ECF No. 22). Plaintiff Marwan Snodgrass timely[1] filed an Objection (Obj., ECF No. 38), and Defendants filed a response (ECF No. 39).[2]

---

[1] Due to a clerical error, the R&R may have initially been inadvertently sent to an address for Mr. Snodgrass that was no longer current at the time of mailing. (ECF No. 35.) On May 28, 2024, the Magistrate Judge directed that the R&R be re-sent to Mr. Snodgrass's current address in Leavittburg, Ohio, and ordered that any objections would be due on June 11, 2024. (ECF Nos. 37, 38.) Mr. Snodgrass's Objection (ECF No. 38), which he filed on June 10, 2024, is thus timely.

[2] On May 6, 2024, the Court received Mr. Snodgrass's "Objection to: Defendant's Reply in Support of the Motion for Summary Judgment." (ECF No. 36.) Therein, Mr. Snodgrass objects to Defendants' Reply (ECF No. 34) and requests that the Court strike the Reply as redundant. (ECF No. 36, PAGEID # 376.) The Court construes the latter request within Mr. Snodgrass's Objection as a Motion to Strike and **DENIES** the Motion.

For the reasons set forth below, the Court **ADOPTS** and **AFFIRMS** the Report and Recommendation (ECF No. 35). Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED**, and this case is **DIMISSED**.

**I.   Background**

Mr. Snodgrass is an Ohio inmate proceeding without the assistance of counsel. (Compl., ECF No. 1-1, ¶¶ 1–2.) He brought this action under 42 U.S.C. § 1983 against Annette Chambers-Smith (Director of the Ohio Department of Rehabilitation and Correction ("ODRC")), Timothy Shoop (Warden at the Chillicothe Correctional Institution ("CCI")), Corby Free (CCI Inspector), and Tabitha Thompson and Beth Mollett (CCI mailroom employees) in their personal and official capacities.[3] (*Id.*, ¶¶ 4–8.) Mr. Snodgrass alleges that Defendants violated his First, Sixth, and Fourteenth Amendment rights with respect to his receipt of legal mail. (*Id.*, ¶¶ 49–50.) He seeks monetary and punitive damages and injunctive relief. (*Id.*, ¶ 59.) He also requests that ODRC return to a previously utilized legal mail policy and refrain from the "practice/policy of opening and cop[y]ing legal mail through the regular mail process." (*Id.*)

**A.   ODRC Inmate Mail Policies**

In October 2021, ODRC notified inmates that it had changed its policies regarding how it processed incoming legal mail. (Compl., ¶ 20; ECF No. 22-1, PAGEID # 179.) At that time, Ohio law defined "legal mail" as "mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service

---

[3] Mr. Snodgrass also includes "Defendant John/Jane Doe" as a defendant in his Complaint (Compl., ¶ 9), but this defendant was never served.

2

law office, a law school legal clinic, court of law, or the correctional institution inspection committee." Ohio Admin. Code 5120-9-17(B)(2) (effective through April 7, 2022). ODRC's new policy required these legal entities to also mark legal mail with a "control number" generated by ODRC. (Compl., ¶ 21; ECF No. 22-1, PAGEID # 179); *see also* Ohio Admin. Code 5120-9-17(B)(2) (effective April 8, 2022) (revised definition of "legal mail" requiring such mail to be "marked with a valid control number provided by [ODRC]"); *Vinson v. Brown*, No. 2:23-CV-80, 2024 WL 84149, at *1 (S.D. Ohio Jan. 8, 2024) (Bowman, M.J.) (describing prior and current legal mail policies). The new policy (No. 75-MAL-03) supplemented the regular mail policy (No. 75-MAL-01) and took effect in February 2022. (ECF No. 1-2, PAGEID # 23–26; ECF No. 22-10, PAGEID # 287.) The new policy did not change the rule that legal mail could "be opened and inspected for contraband only in the presence of the inmate-addressee." (ECF No. 22-1, PAGEID # 180); *see also* Ohio Admin. Code 5120-9-17(B)(2).

Upon receiving legal mail, CCI mailroom staff make a record in a legal mail log, which the inmate-addressee signs to indicate that the mail was opened in his presence. (ECF No. 1-2, PAGEID # 24.) CCI staff may withhold legal mail on the suspicion that it contains contraband, in which case the inmate has fifteen (15) days to appeal the withholding, and CCI staff should "hold the legal mail (without opening, altering, or copying the legal mail) until a decision is made by the managing officer/designee on the appeal." (*Id.*, PAGEID # 26; Compl., ¶ 38.) Mail that does not meet the definition of legal mail is treated as "regular, nonlegal mail" that "may be read and copied or scanned in the institution mail office." (ECF No. 22-

3

10, PAGEID # 289); Ohio Admin. Code 5120-9-17(B)(1)–(2). When regular mail is deemed contraband (or otherwise violates ODRC policy), the inmate has ten (10) days to either send the unauthorized regular mail item to another address or allow it to be destroyed. (*Id.*)

### B. Mr. Snodgrass's Mail

Mr. Snodgrass's allegations concern mail received from Greentree Legal[4] and other sources. (Compl., ¶¶ 27, 30–36.)

#### 1. Greentree Legal

On December 13, 2021, Mr. Snodgrass notified CCI mailroom staff that he wanted his incoming legal mail opened in his presence. (Compl., ¶ 22; *see also* ECF No. 1-3.) Mr. Snodgrass anticipated that he would be receiving a package of medical records from Greentree Legal related to a wrongful death action he was litigating in state court on behalf of his mother. (Compl., ¶¶ 30, 56; ECF No. 22-8.) In response, Ms. Mollet told him that the only mail that would not be "opened, examined[,] and copied" was mail "marked Legal, Confidential, from an Attorney, or with a control number." (ECF No. 1-3, PAGEID # 27.)

Mr. Snodgrass contacted the mailroom again on December 20 and inquired about the status of his package, specifying that it contained "medical records among other legal documents." (ECF No. 1-4, PAGEID # 28.) He referenced a UPS tracking receipt showing that a twenty-pound package was delivered on December 8 and

---

[4] Greentree Legal is a courier service that offers "safe and secure delivery of legal documents." (ECF No. 22-4); *see also* https://www.greentreelegal.com/ (last accessed July 8, 2024). Greentree does not employ or retain attorney staff, offer legal representation, or retain files. (ECF No. 22-4, ¶ 7.)

4

"received by: a Hamilton which was left on the dock." (*Id.*, PAGEID # 28, 30.) However, Ms. Thompson replied that "[i]f you don't have it yet then we don't have it." (*Id.*) Upon hearing from Ms. Thompson, Mr. Snodgrass immediately filed an informal complaint with Inspector Free, which was later escalated to a formal grievance. (ECF No. 1-5, PAGEID # 31.) He argued that the records were confidential and "sent from Greentree legal which is a legal serving agency," such that the delay in his receipt amounted to a "violation of [his] first amendment right to access [ ] the courts." (*Id.*)

The same day that Mr. Snodgrass filed his complaint, the mailroom received a package from "Greentree Legal LLC" via first class mail. (ECF No. 22-6, ¶ 4; ECF No. 22, PAGEID # 162; ECF No. 33-1, PAGEID # 337.) The package was "not marked as being legal correspondence, nor did it contain a legal control number for verification." (ECF No. 22-6, ¶ 4.) Because Ms. Thompson was unable to verify the sender status of "Greentree Legal LLC" and because the package did not appear to be legal mail under ODRC's policies, she "presumed it was regular mail." (*Id.*, ¶ 5.) Ms. Thompson did not review the contents of the package but rather deemed the package contraband because it exceeded ODRC's permitted size. (*Id.*, ¶ 6.) She then sent Mr. Snodgrass a form stating that the mail he received was contraband from an "unverified sender" and was "not legal." (*Id.*, ¶ 6; ECF No. 22-1, PAGEID # 196.) When Mr. Snodgrass did not return the form within the required ten days (the time limit for regular mail) or provide an address where the package could be sent, Ms. Thompson shredded the package on January 11, 2022. (ECF No. 22-6, ¶¶ 6–7; ECF No. 22-1, PAGEID # 196.)

5

Meanwhile, along with complaining to Inspector Free, Mr. Snodgrass reached out to Warden Shoop, providing much of the same information as in his complaint and referencing his receipt of the contraband form from Ms. Thompson. (ECF No. 1-6, PAGEID # 33.) Warden Shoop directed him to address his concern with Clark Goble, who was part of unit management. (*Id.*) Mr. Snodgrass did so, and Mr. Goble responded that he should reach out to the mailroom supervisor if he believed his package constituted legal mail. (*Id.*, PAGEID # 34.) The record does not reflect that Mr. Snodgrass did so.[5]

Inspector Free subsequently denied Mr. Snodgrass's grievance due to his failure to return the form that Ms. Thompson provided to him. (ECF No. 1-5, PAGEID # 31.) Mr. Snodgrass appealed Inspector Free's decision but was unsuccessful. (*Id.*, PAGEID # 31–32.) He also contacted the mailroom to ask for "a copy form of the action which was taken by mail officer" for the package, at which time Ms. Thompson told him that the package had been destroyed. (ECF No. 1-6, PAGEID # 36.)

    2.    Other Mail

Mr. Snodgrass also alleges that he received fifteen pieces of mail between January and April 2022 that were "clearly legal mail by nature" but were opened outside his of presence. (Compl., ¶ 27; ECF No. 33, PAGEID # 325–26.) Senders included individuals from Poling Law; Wright & Schulte; Bieser, Greer & Landis,

---

[5] CCI's legal mail logs reflect that Mr. Snodgrass did not receive any mail that CCI classified as "legal mail" between December 7 and December 23, 2021. (ECF No. 22-1, PAGEID # 182–195.)

6

LLP; Calderhead, Lockemeyer & Peschke; and Bricker & Eckler. (*Id.*) Mr. Snodgrass provided the Court with scans of three envelopes[6] showing return addresses (ECF No. 33-1, PAGEID # 338–41), but he asserts that he received the other letters without corresponding envelopes, leaving him with no way of knowing how they were marked when the mailroom received them. (Compl., ¶ 28 n.1.)

On January 26 and 27, Mr. Snodgrass contacted the mailroom and requested the date and time that mail from "Poling the practice perfected" was forwarded to him. (ECF No. 1-6, PAGEID # 35, 37.) Ms. Mollet replied that the mail was received, and it would be copied and sent to him. (*Id.*, PAGEID # 35.)

## II. Standard of Review

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Analysis

Mr. Snodgrass contends that Defendants violated his First Amendment rights by destroying his mother's medical records and by opening his legal mail outside of his presence. (Compl., ¶¶ 28, 49–50.) He also alleges that Defendants

---

[6] Mr. Snodgrass also provided a scan of an accompanying letter from Brant E. Poling and Lucy A. Reed informing him that they had been retained to represent a defendant in his mother's wrongful death action. (ECF No. 33-1, PAGEID # 338–41.)

7

violated his due process right of "access to the courts" protected by the Fourteenth Amendment and his Sixth Amendment right to counsel. (*Id.*, ¶¶ 49–50.) Defendants moved for summary judgment on all claims. (ECF No. 22.)

The Magistrate Judge issued a Report and Recommendation (ECF No. 35) recommending that the Court grant Defendants' Motion. Mr. Snodgrass objects to the Report and Recommendation on several grounds. (ECF No. 38.) The Court addresses each below.

### A. First Amendment Claim as to Greentree Package

The Magistrate Judge determined that the Greentree package containing Mr. Snodgrass's mother's medical records was not constitutionally protected "legal mail." (R&R, PAGEID # 361.) The Magistrate Judge explained:

> The mail was not marked in a way that put Defendants on notice that the package contained confidential or legal materials. Greentree Legal is a courier service that offers "safe and secure delivery of legal documents." (Doc. 22-4 at 5 (Greentree Legal website)). This fact alone is not dispositive, as mail delivered by courier services can sometimes qualify as legal mail. *Kensu*, 87 F.3d at 174 ("[I]t is the content [of the mail] and not the method of delivery which is the subject of the protected right."). But the Sixth Circuit has been plain that mail must be clearly marked in some way as containing legal materials, as being confidential, or as being from an attorney … Moreover, the return address, according to the Defendant Thompson and the DRC 4225 form, was "Greentree," rather than from a court or specific attorney. (Doc. 22-1 at 20; Doc. 22-6) … Here, there was nothing clearly marked on the package from Greentree that would put CCI mailroom staff on notice that it should receive constitutional protections.

(*Id.*, PAGEID # 359–61.) Additionally, the Magistrate Judge reasoned that the package was not of a type to "implicate legal mail protections" because it related to an independent wrongful death action as opposed to an action challenging Mr.

8

Snodgrass's conviction, sentence, or the conditions of his confinement. (*Id.*, PAGEID # 361–62.)

Mr. Snodgrass objects that the package should have been presumed to be "legal mail" because of Greentree's status as a "legal serving agency." (Obj., PAGEID # 383–84.) But the Court finds no error in the Magistrate Judge's finding to the contrary. That private courier services can deliver legal mail does not mean that all mail from such services automatically constitutes legal mail; rather, "it is the content and not the method of delivery which is the subject of the protected right." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The evidence indicates that besides the identity of the sender, the package was not otherwise marked as being confidential, privileged, or legal correspondence. (ECF No. 22-6, ¶ 4); *see Kensu*, 87 F.3d at 174 (emphasis added) ("[W]e today define 'legal mail' to include delivery of legal materials to a prisoner, *properly and clearly marked as legal materials*, via the U.S. Postal Service or alternative private courier services, and hand delivery."). The Magistrate correctly concluded that more information would be required to put Defendants on notice that the package contained privileged or legal materials.

B.     **First Amendment Claim as to Mail from Other Sources**

With respect to the letters that Mr. Snodgrass alleges were improperly opened outside his presence, the Magistrate Judge concluded that:

> [T]he record reflects that three of the fifteen letters were not clearly marked in a way that would put Defendants on notice that the mail should garner heightened constitutional protections. Even if they had been clearly marked, Plaintiff only alleged that his mail was opened and copied with the requisite specificity required at the summary judgment stage as to one of these letters. And Plaintiff did not develop the record as to the other pieces of mail beyond conclusory allegations.

9

(R&R, PAGEID # 367.)

Mr. Snodgrass insists that not one but three pieces of mail were opened in violation of his rights and disagrees with the Magistrate Judge's conclusion that these three letters were not clearly marked. (Obj., PAGEID # 386–87.) But, as the Magistrate Judge observed, even if the Court were to credit Mr. Snodgrass's objections, he still does not prevail because he has not sufficiently supported his assertions at the summary judgment stage. (R&R, PAGEID # 365–66.) Mr. Snodgrass offers conclusory allegations with respect to fourteen of the fifteen letters, leaving only one letter that was potentially opened and copied. (*Id.*, PAGEID # 365.) This is far from the repeated opening of mail in an arbitrary or capricious manner that would give rise to a cause of action. *See, e.g.*, *Salem v. Warren*, 609 F. App'x 281, 284 (6th Cir. 2015); *Terry v. Crawford*, No. 3:21-CV-35, 2024 WL 1155854, at *5 (S.D. Ohio Mar. 18, 2024) (Newman, J.) ("[A] single incident of opening legal mail does not give rise to a constitutional claim.").

### C. Fourteenth Amendment Claim

Next, the Magistrate Judge found that Defendants are entitled to summary judgment on Mr. Snodgrass's Fourteen Amendment claim because his right of access to the courts does not extend to a wrongful death action. (R&R, PAGEID # 362, 367.) Mr. Snodgrass admits that the right does not extend to all actions, but he argues that there is no caselaw explicitly applying that principle to wrongful death actions. (Obj., PAGEID # 388.) Such is not necessary. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (emphasis added) ("[A] prisoner's right to

10

access the courts extends to direct appeals, habeas corpus applications, and civil rights claims *only*."). Additionally, notwithstanding Mr. Snodgrass's view, the Court agrees that his claim fails because even if the medical records had been retained, he still lacked standing to bring the wrongful death actions for which the records would be used. (ECF No. 22-8, PAGEID # 272.)

### D. Sixth Amendment Claim

As the Magistrate Judge stated, the Sixth Amendment "does not extend to attorney-client relationship in civil litigation." (R&R, PAGEID # 367.) Mr. Snodgrass does not dispute this point but rather emphasizes (without support) that the protection extends to "afforded confidential communications between attorney and client." (Obj., PAGEID # 389.) Because the letters at issue related to his civil wrongful death action, his objection is unavailing.

### E. Immunity

Finally, the Magistrate Judge found that Defendants are immune from suit in their official capacities to the extent that Mr. Snodgrass seeks monetary damages and entitled to qualified immunity for his claims against them in their individual capacities. (R&R, PAGEID # 369.) The Court agrees—the Eleventh Amendment bars his official-capacity claims, and he has not shown a constitutional violation such that qualified immunity for Defendants from their individual-capacity claims would be inapplicable.

### F. Injunctive Relief

Mr. Snodgrass devotes much of his summary judgment briefing and Objection to criticizing the unconstitutionality of ODRC's new mail procedure under which a

11

control number is required. But the Magistrate Judge correctly held that Mr. Snodgrass does not have standing to bring a claim for injunctive relief concerning ODRC's policy enforcement because he has not alleged an injury in fact. (R&R, PAGEID # 371.) Defendants' treatment of his mail would have been the same under either policy. (ECF No. 22-6, ¶ 4 (emphasis added) ("*It was not marked as being legal correspondence*, nor did it contain a legal control number for verification.").) And he has not shown that his future mail that may deserve heightened legal protection has or will imminently be treated as regular mail under the current ODRC policies.

### IV. Conclusion

Mr. Snodgrass's Objection (ECF No. 38) is **OVERRULLED**. The Court **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation (ECF No. 35). Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED**, and the Clerk is **DIRECTED** to **TERMINATE** this case from the docket of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**